### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TIFFANY TOTH GRAY, et al., | |
| Plaintiffs, | |
| v. | Case No. 22-cv-1393 (TSC) |
| HARCO, INC., et al., | |
| Defendants. | |

### <u>MEMORANDUM OPINION</u>

Each of the ten Plaintiffs in this action is a "well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services." Compl. ¶ 21, ECF No. 1. Defendants operate Archibald's Gentleman's Club ("Archibald's" or the "Club"), a strip club in Washington, D.C., and manage its social media accounts. *Id.* ¶¶ 6, 20. Plaintiffs allege that Defendants misappropriated their images and used them in advertisements for the Club without Plaintiffs' consent. They bring eight counts for violations of the Lanham Act and several common law torts. Defendants moved to dismiss the Complaint in its entirety, ECF No. 11 ("Mot."), and Plaintiffs opposed, ECF No. 12 ("Opp."). For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

### I.     BACKGROUND

The court assumes the truth of the facts alleged in the Complaint as follows. *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Plaintiffs earn their living modeling and licensing their images to companies, magazines, and individuals. Compl. ¶ 21. They have posed for magazines including Playboy, Maxim, GQ, Esquire, and others; appeared in

various films, music videos, and television shows; modeled for international product lines and fashion brands; and maintain large social media followings. *Id.* ¶¶ 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58. Plaintiffs are selective in choosing the companies and brands they represent because their careers in the modeling industry place high value on their good will and reputation. *Id.* ¶ 22. Each Plaintiff resides outside the District of Columbia. *Id.* ¶¶ 8–19.

Defendant Harco, Inc. operates Archibald's Gentlemen's Club in the District of Columbia. *Id.* ¶¶ 1, 6. Plaintiffs claim the unnamed Defendants manage the social media accounts for the Club and use those accounts to promote and attract customers. *Id.* ¶¶ 62–63. From at least 2016 to 2017, Defendants sourced images from Plaintiffs' social media pages and altered them to create posts advertising the Club on the Club's Facebook, Twitter, and Instagram pages. *Id.* ¶ 23; Exs. A–K. Defendants altered Plaintiffs' images to make it appear that they worked at the Club, endorsed the Club, or were otherwise affiliated with the Club. *Id.* ¶¶ 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59; Exs. A–K. None of the Plaintiffs have ever been employed by the Club, hired to endorse or promote the Club, or received compensation from Defendants for use of their images. *Id.* ¶¶ 30, 33, 36, 39, 42, 45, 48, 51, 54, 57, 60, 82, 83.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). Evaluating a 12(b)(6)

motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The reviewing court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).  Subject-matter jurisdiction exists for the non-federal claims pursuant to 28 U.S.C. § 1332(a)(1) because the parties have complete diversity and the amount in controversy exceeds $75,000.00.  See Compl. ¶¶ 4, 6, 8– 19.  The parties agree that District of Columbia law governs the common-law claims.  *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 790 (D.C. Cir. 2019).

### A.    <u>Right of Publicity (Count I)</u>

The court construes Plaintiffs' right of publicity claim as a claim for misappropriation. The right of publicity protects an individual's "exclusive right to publicize and benefit from the value of [her] identity, reputation, and work." *Lane v. Random House, Inc.*, 985 F. Supp. 141, 145 (D.D.C. 1995).  The District of Columbia does not recognize a common law tort for right of publicity, but recognizes the tort of misappropriation of name or likeness, "which has been found to be indistinguishable as a legal matter from infringement of right of publicity." *Sampedro v. Anyado Grp., LLC*, No. 22-cv-1402-BAH, 2023 WL 1398577, at *4 (D.D.C. Jan. 31, 2023) (internal quotations omitted).

A defendant is liable for misappropriation where it "appropriates to his own use or benefit the name or likeness of another." *Tripp v. United States*, 257 F. Supp. 2d 37, 40 (D.D.C. 2003) (quoting Restatement (Second) of Torts § 652C); *see also Doe v. Bernabei & Wachtel,*

*PLLC*, 116 A.3d 1262, 1268 (D.C. 2015).  "The common form of invasion of privacy under [this rule] is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose."  Restatement (Second) of Torts § 652C, cmt. b.  "Incidental use . . . for a purpose other than taking advantage of a person's reputation or the value associated with his name will not result in actionable appropriation." *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 592 (D.C. 1985).

Defendants argue that Plaintiffs' misappropriation claim is barred by the statute of limitations and the doctrine of laches, and that any alleged misuse of Plaintiffs' images was incidental.  Mot. at 1–2.

### i.    *Statute of Limitations*

"At the Rule 12(b)(6) stage, a court should not dismiss on statute of limitations grounds unless the claim is time-barred on the face of the complaint."  *Bradford v. George Wash. Univ.*, 249 F. Supp. 3d 325, 334 (D.D.C. 2017) (internal quotations omitted).  Still, "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint" because "statute of limitations issues often depend on contested questions of fact." *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017) (internal quotations omitted).

Here, the applicable statute of limitations is three years.  D.C. Code § 12-301(8).  This period begins to run "when a plaintiff either has actual knowledge of a cause of action or is for some reason charged with knowledge of that cause of action."  *Chandler v. Berlin*, 998 F.3d 965, 972 (D.C. Cir. 2021) (citing *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)).  "In circumstances when an injury is 'not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred,'" the discovery rule applies. *Washington Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 128, 138 (D.D.C. 2018) (quoting *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984).

The discovery rule tolls the statute of limitations "until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing." *Chandler*, 998 F.3d at 971 (internal quotations omitted).

Defendants argue that Plaintiffs' claims fall outside the limitations period because the Complaint was filed almost five years after publication of all but one image. Mot. at 9–10. Defendants point out that the social media timestamps on every post—except for the undated post in Exhibit E—show that each was published in 2016 or 2017. *Id.* But Defendants' argument requires the court to find that the accrual date for each of Plaintiffs' claims began on the date each image was published. That finding is unsupported because the statute of limitations only "starts ticking when the plaintiff has sufficient notice of the conduct which is now asserted as the basis for [her] lawsuit." *Sanders v. District of Columbia*, 85 F. Supp. 3d 523, 531 (D.D.C. 2015) (cleaned up).

The Complaint does not allege that Plaintiffs discovered each image on the date of its publication, nor will the court infer that fact from the posts' timestamps. *See Hinton v. Sansom St., Inc.*, No. 20-cv-1515-JMY, 2021 WL 1313107, at *4 (E.D. Pa. Apr. 7, 2021) (denying motion to dismiss "because the face of the [Complaint] does not clearly identify when the Plaintiffs discovered or should have discovered the publication of their image on the Defendants' Internet social media network"). At no point was any Plaintiff affiliated with the Club, none of them reside in the District of Columbia, and the Complaint alleges that Archibald's "misappropriation occurred without any Plaintiff's knowledge." Compl. ¶¶ 25, 68, 79. Plaintiffs further allege that "the manner in which Defendants posted and publicized" their images was "hidden, inherently undiscoverable, or inherently unknowable" because Defendants published their images on social media threads that are "pushed down" over time from immediate

visibility. *Id.* ¶ 93. There is thus no basis to infer that Plaintiffs should have or did discover their images in the Club's posts in 2016 or early 2017.

Plaintiffs invoke the discovery rule to argue that their claims did not accrue on the date of each image's publication, but after Plaintiffs reasonably should have known of the images' publication. Opp. at 3–4. Defendants argue that even if the discovery rule applies, Plaintiffs were on notice by the date each image was captured via screenshot, as identified from the timestamps in the upper right-hand corner of each picture attached as an exhibit to Plaintiffs' Complaint. Mot. at 6–7, ¶ 12. To overcome Plaintiffs' invocation of the discovery rule, Defendants "must be able to show that the allegations of the complaint themselves foreclose" Plaintiffs' reliance on the rule. *Marzorati v. MedStar-Georgetown Med. Ctr., Inc.*, 265 F. Supp. 3d 24, 28 (D.D.C. 2017). The Complaint contains no allegations regarding the date Plaintiffs discovered the Club was using their images, and therefore does not allege that Plaintiffs discovered their images on or before the date of each screenshot. It is not Plaintiffs' burden to disprove Defendants' statute of limitations defense. *See Firestone v. Firestone*, 76 F.3d 1205, 1210 (D.C. Cir. 1996) ("The statute of limitations is an affirmative defense that defendant must prove."); *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 7 (D.D.C. 2019) ("The statute of limitations is an affirmative defense and need not be negatived by the language of the complaint.") (citations omitted). "[W]hile a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

Defendants' statement that "Plaintiffs discovered Defendants' use of their images and likenesses" on the date of each screenshot asks the court to make factual findings that are

unsupported by the record.  Mot. at 6 ¶ 12.[1]  And to the extent Defendants seek to impute

Plaintiffs' counsel's knowledge to Plaintiffs, nothing in the Complaint indicates when counsel

were engaged by each Plaintiff, and Defendants cite no authority supporting such a finding.  *Cf.*

*Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 557 n.7 (4th Cir. 2019) (suggesting in context of

fraudulent concealment that "once a plaintiff hires counsel to investigate a claim, it may be

appropriate to impute the counsel's knowledge to the plaintiff . . . [b]ut until that point, a plaintiff

cannot be charged with the knowledge of his yet-to-be-retained counsel.").  While courts

"sometimes impute to a client knowledge that a lawyer obtained before representing that client,"

*In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 309 (4th Cir. 2019) (citing *Link v.*

*Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)), "particularly where there is a single attorney

and a single known client in an ongoing relationship," *L.I. Head Start Child Dev. Servs., Inc. v.*

*Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 558 F. Supp. 2d 378, 397 (E.D.N.Y. 2008),

*aff'd*, 710 F.3d 57 (2d Cir. 2013), in this case there is no single-attorney single-client

relationship, and it is inappropriate at the motion to dismiss stage to impute any alleged

knowledge of Plaintiffs' attorneys to each Plaintiff.

 In sum, the Complaint does not indicate when any Plaintiff discovered that her images

were being utilized by Defendants, nor when she should have discovered her images were being

used by the Club for purposes of the discovery rule.  This information is of the type that will

become available through the discovery process.  *See Lundberg v. One Three Five, Inc.*, No.

2:19-cv-692-RJC, 2022 WL 2669136, at *3 (W.D. Pa. Jan. 14, 2022), *R&R adopted*, No. 2:19-

---

[1] Defendants' argument assumes that Plaintiffs—not Plaintiffs' counsel or another third party—
took or were made aware of the screenshots attached to the Complaint by the date each
screenshot was taken.  But the court must give the benefit of all inferences to Plaintiffs.  *See*
*Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).

cv-692, 2022 WL 2668557 (W.D. Pa. Mar. 15, 2022).  Accordingly, Defendants' motion to dismiss Count I based on the statute of limitations will be denied because the Complaint does not clearly identify when any Plaintiff discovered or should have discovered the publication of her images on the Defendants' social media sites.

    ii.    <u>Laches</u>

"Laches is the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 639 (D.C. 2015) (quoting *Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 525 (D.C. 2003)).  "To establish a successful laches defense, the defendant must show that the plaintiff was guilty of unreasonable delay prejudicial to the defendant." *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982); *see also Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005) (defense of laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense").  The defendant bears the burden of establishing the elements of laches. *Kemp v. Eiland*, 139 F. Supp. 3d 329, 349 (D.D.C. 2015).  "Laches is a fact-intensive defense poorly suited to a motion to dismiss." *Id.* at 349–50.[2]

 "Determining what an 'unreasonable delay' is varies from case to case," and a court is not bound to follow the analogous statute of limitations. *Nicklin v. Stonesdale Unit Owners' Ass'n*, 307 A.3d 477, 488 (D.C. 2024).  Because the laches inquiry requires the court to "weigh [] both the length of delay and the amount of prejudice, it leaves the district court very broad discretion to take account of the particular facts of particular cases." *Healthy Futures of Tex. v.*

---

[2] As Plaintiffs note, Defendants have not identified any case in which a laches defense was granted on a motion to dismiss.  Opp. at 6.

*Dep't of Health & Hum. Servs.*, 315 F. Supp. 3d 339, 344 (D.D.C. 2018) (quoting *Pro-Football,*
*Inc.*, 565 F.3d at 885).  To calculate the length of Plaintiffs' delay in bringing suit and evaluate
whether any such delay was "unreasonable," the court must determine when Plaintiffs' claims
accrued.  But, as explained above, the court cannot determine the date of accrual from the face of
the Complaint.  *Supra* at 5–7.  Though Defendants claim that Plaintiffs were aware of "every
alleged unsanctioned use of their images by no later than May 30, 2019, almost three full years
before they filed suit," no such allegation appears in the Complaint.  Mot. at 15.  Defendants'
argument once again requires the court to find that Plaintiffs were aware of or reasonably should
have known of their images' publication by the date of each screen capture reflected in the
Complaint's exhibits.  For the reasons explained above, the court cannot agree with that premise
and finds that Defendants have not carried their burden to show undue delay.  Consequently, the
court will deny the motion to dismiss Count I on the ground of laches.

  *iii.* <u>*Incidental Use*</u>

  Defendants claim their use of Plaintiffs' images is protected by the incidental use
privilege.  Mot. at 17–19.  The incidental use privilege applies when a person's likeness is
referenced "in connection with legitimate mention of his public activities."  *Lane*, 985 F. Supp.
at 147.  The privilege does not apply when a publication is designed to take advantage of an
individual's "reputation, prestige, or other value" associated with their likeness, or when a
defendant publicizes a plaintiff's image for the purpose of "appropriating to the defendant's
benefit the commercial or other values associated" with it.  Restatement (Second) of Torts
§ 652C, cmt. d (1977).

  The Restatement's illustration draws the line in Plaintiffs' favor: where advertiser "B"
publishes a photograph of an actress "noted for her beautiful figure" with the caption "Keep That
Sylph-Like Figure by Eating More of B's Rye and Whole Wheat Bread," the advertiser has

misappropriated the actress's likeness.  *Id.*, cmt. b ill. 1.  The Club's use of Plaintiffs' images fits within this example.  For example, Exhibit B to the Complaint includes a prominent photo of Plaintiff Sampedro and encourages patrons to attend "Sueriya's Lavish Birthday Celebration," suggesting that Sampedro is somehow affiliated with the event.  Compl. Ex. B-1.  Similarly, Exhibit C includes a photo featuring Plaintiff Underwood eating a hamburger and includes the hashtags #upgradetoarchibalds, #comeplaywithus, #archibaldsangels, #ourgirlsarehotterthan yours, and #halfoffburgermondays, implying that Underwood is one of "archibaldsangels" and endorses the Club's hamburger special.  Compl. Ex. C-1.  The court has little trouble concluding that Plaintiffs have alleged that Defendants selected and utilized images of Plaintiffs—actresses or models "noted for" their figures—to take advantage of the prestige or other value associated with their likenesses in order to advertise the Club and its products or services.

Defendants counter with four arguments.  First, they claim that Plaintiffs failed to allege that the Club derived value from their specific reputations.  Mot. at 18; *see also* Reply at 6, ECF No. 13 (claiming Plaintiffs make only conclusory allegations that Archibald's "sought to use their reputation, or any value associated with their names.") (citing *Vassiliades*, 492 A.2d at 592).  Defendants are correct insofar that to state a claim for misappropriation, Plaintiffs must allege that Archibald's (1) derived a commercial benefit, (2) from the value or reputation associated with each Plaintiff.  *See Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 55 (D.D.C. 2010), *aff'd*, 748 F.3d 1285 (D.C. Cir. 2014) (commercial benefit); *Tripp*, 257 F. Supp. 2d at 41–42 (value must be associated with mention or use of plaintiff's name or likeness); *see also Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 104 (D.D.C. 2020) (denying motion to dismiss where the complaint alleged that plaintiff's name, "while it may not have had any

value to the general public, had commercial value to Defendants"). Defendants claim that Plaintiffs have alleged these elements only "in conclusory terms." Mot. at 18.

The court finds Plaintiffs' allegations sufficient. They allege that Archibald's used their images to receive commercial benefits including "monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income." Compl. ¶ 66; *see also id.* ¶ 72 (Defendants "invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote the Club."). As Plaintiffs point out, Archibald's would not have used Plaintiffs' likenesses over images of Club employees to advertise the Club unless Defendants believed Plaintiffs' images would attract customers and thereby increase the Club's profits. Opp. at 9. And the allegations in the Complaint detailing Plaintiffs' large social media followings distinguish these Plaintiffs from those who could show no value attached to their name or likeness: a former secretary and housewife, *see Vassiliades*, 492 A.2d at 585, 592; a previously unknown employee of a company, *see Pearce v. E.F. Hutton Grp., Inc.*, 664 F. Supp. 1490, 1493, 1500 (D.D.C. 1987); a doctor at Howard University Hospital, *see Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 12 (D.D.C. 2013); and a former treasurer of a political action committee, *see Teltschik*, 683 F. Supp. 2d at 37, 55. *See also Tripp*, 257 F. Supp. 2d at 41–43 (collecting sources). In contrast, Plaintiffs' allegations detailing the magazines, films, and television shows in which they have appeared, their modeling careers for international product lines and fashion brands, their large social media followings, and the fact that each Plaintiff "earns her livelihood modeling and licensing her Images" are not conclusory and suffice to state a claim that the public associates value with each of their likenesses. Compl. ¶¶ 21, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58; *see also Sampedro*, 2023 WL 1398577, at *4.

Defendants next argue that Plaintiffs' misappropriation claim fails because the Club did not specifically name or identify Plaintiffs in the images at issue.  Mot. at 18.  Defendants rely on *Tripp*, a case based explicitly on misappropriation of a plaintiff's *name*, not her likeness.  *See* 257 F. Supp. 2d at 39 ("Plaintiff contends that defendant unlawfully used her name to their benefit").  Defendants cite no authority requiring a plaintiff to show appropriation of *both* name and likeness to bring a claim for misappropriation of likeness.  In fact, the Restatement's example refers only to "an actress, noted for her beautiful figure," whose image is used under a caption that does *not* name her.  Restatement (Second) of Torts § 652C, cmt. b ill. 1.  To the extent Defendants argue that Plaintiffs, like the plaintiff in *Vassiliades*, are not sufficiently recognizable to generate public interest or other value in their likenesses, that argument is foreclosed by the Complaint's allegations that each Plaintiff is a well-known professional model. *See, e.g.*, Compl. ¶ 21.[3]

Third, Defendants argue that Plaintiffs "failed to identify any specific person" who recognized their photographs in the Club's social media posts.  Mot. at 18 (citing *Barnako v. Foto Kirsch, Ltd.*, 86-cv-1700, 1987 WL 10230, at *2 (D.D.C. Apr. 16, 1987)).  But a plaintiff is not required to name a specific person who recognized the photographs at issue to state a misappropriation claim.  Plaintiffs have alleged that they are substantially more recognizable than the member of the Occupational Safety and Health Review Commission in *Barnako*, whose suit was dismissed because he failed to demonstrate that any member of the public recognized his photograph and thereby "conferred some commercial benefit" on the defendant because of

---

[3] In *Vassiliades*, the court dismissed plaintiff's misappropriation claim not because defendant failed to include plaintiff's name under before and after photos documenting her plastic surgery, but because plaintiff had "not shown there was a public interest or other value in her likeness."  492 A.2d at 592.

the "positive values they associated with Barnako's name or reputation." *Barnako*, 1987 WL

10230, at *1–2.  The court indicated that Barnako could have made this showing by alleging that

"a single person, other than himself, recognized his photograph," but did not hold that

identifying a specific individual is the only means to demonstrate public recognition.  *Id.*  To the

contrary, the complaint in *Tripp* included only two paragraphs relevant to Linda Tripp's

misappropriation claim, neither of which named a specific individual who recognized her name.

*See Tripp*, 257 F. Supp. 2d at 39–40.[4]  Extending *Barnako*'s holding to well-known individuals

would be inapt where Plaintiffs have alleged vast social media followings that allow the court to

infer that Plaintiffs are widely recognizable.  *Supra* at 11.

 Finally, Defendants argue that Plaintiffs cannot state a claim for misappropriation absent

"any sort of direct, but unauthorized, statement of endorsement."  Mot. at 18–19.  They contend

that the images attached to the Complaint do not "name the Plaintiffs specifically, do not indicate

that the Plaintiffs will be at the Club (nor stripping there), and do not state that the Plaintiffs

endorse the club."  *Id.* at 18.  Defendants are incorrect that an explicit endorsement is required.

*See* Restatement (Second) of Torts § 652C, cmt. b ill. 1.  As Judge Howell concluded after

reviewing similar social media posts featuring models whose images were used to advertise

another club in the District of Columbia, Archibald's use of Plaintiffs' images in its own

advertising "plainly amounts to appropriation of the value of plaintiffs' likenesses per the

Restatement's definition."  *Sampedro*, 2023 WL 1398577, at *4.

---

[4] Tripp alleged that "DOD employees appropriated the Plaintiff's name, discrediting her and making her a scapegoat, in order to take advantage of the value associated with Plaintiff's name as a result of her sudden high profile status as a key witness in investigations into White House and/or presidential wrongdoing." *Tripp*, 257 F. Supp. 2d at 40.  Tripp's suit survived both a motion to dismiss and a motion for reconsideration.

B.    **Lanham Act Claims (Counts II and III)**

Plaintiffs next claim that the Club's posts using their images violated § 43(a) of the Lanham Act.  *See* 15 U.S.C. §§ 1125(a)(1)(A)–(B); Compl. ¶¶ 101–19.  Defendants argue that Plaintiffs' Lanham Act claims for false advertising and false association are presumptively barred by the doctrine of laches.  Mot. at 16–17.

To determine whether a Lanham Act claim was timely filed, "courts apply the equitable doctrine of laches because the Lanham Act does not contain a statute of limitations."  *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 213 (D.D.C. 2014) (quoting *Gaudreau v. Am. Promotional Events, Inc.*, 511 F.Supp.2d 152, 158 (D.D.C. 2007).  In the District of Columbia, the appropriate limitations period applicable to a laches analysis for Lanham Act claims is three years.  *Id.* at 213–14; *see also Sampedro*, 2023 WL 1398577, at *2 n.1.  Defendants claim that all but Plaintiff Gaxiola's Lanham Act claims are presumptively barred because Plaintiffs sued outside the three-year statute of limitations.  Mot. at 17.  This argument rests on Defendants' view that the accrual period for each claim began no later than the screenshot date of each exhibit, which the court has already rejected.  *Supra* at 6–7.  The Complaint does not contain the facts necessary to establish an accrual date and to make out a laches defense.  *See Gibson v. Metropolis of CT LLC*, No. 19-cv-544-KAD, 2020 WL 956981, at *5 (D. Conn. Feb. 27, 2020) (denying motion to dismiss Lanham Act claims for untimeliness where defendants "simply assume[d] an accrual date identical to the publication date").  The court will deny the motion to dismiss Counts II and III for the same reasons explained above. *Supra* at 8–9.

C.    **Defamation (Count IV)**

Plaintiffs initially included a defamation claim for each of Plaintiffs' images attached to the Complaint.  Compl. ¶¶ 120–32.  In their briefing, Plaintiffs withdrew "all defamation claims

based on advertisements published in 2016 or 2017." Opp. at 3 n.2.  They do not specify which images, if any, support their remaining defamation claims.  Without this information, the court cannot evaluate Plaintiffs' surviving claims and will therefore deny the motion to dismiss without prejudice and require further briefing to determine which images form the basis of Plaintiffs' claim.

The District of Columbia has a one-year statute of limitations for defamation claims. D.C. Code § 12–301(4); *Chandler v. Berlin*, 998 F.3d 965, 971 (D.C. Cir. 2021); *see also Maupin v. Haylock*, 931 A.2d 1039, 1041–42 (D.C. 2007).  The D.C. Court of Appeals has declined to adopt the discovery rule when the defamatory statement was published in a "mass media outlet," but has "expressly left open the question of whether the discovery rule should be applied where the statement was undiscoverable because a defendant concealed the material, or because it was not otherwise discoverable." *Chandler*, 998 F.3d at 971 (citing *Oparaugo v. Watts*, 884 A.2d 63, 74 n.8 (D.C. 2005)).[5]  Other courts in this district have applied the discovery rule to defamatory statements not published by a mass media outlet.  *See McFadden v. Washington Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 222 (D.D.C. 2013) (discovery rule applied to statements made at a grievance hearing in the presence of labor and management officials at WMATA, "a limited audience akin to a specialized readership") (internal quotations omitted).  Here, neither party addressed *Chandler* or whether the discovery rule applies to Plaintiffs' defamation claims, even though *Chandler* was issued more than a year before Defendants filed their motion to dismiss.

---

[5] The parties in *Chandler* agreed that the discovery rule applied to statements made in a private investigator's report delivered to an intelligence operative in 2003, more than 15 years before plaintiff filed suit.  998 F.3d at 968, 972.  The Circuit remanded to the district court to apply the discovery rule and determine when Chandler first knew or should have known of his possible claim.  *Id.* at 975.

Defendants argue that every image at issue was published over a year before Plaintiffs

sued, and therefore falls outside D.C.'s one-year statutory period for defamation claims.  Mot. at

11.  Plaintiffs' response that their defamation claims "must be brought within one year of the

original publication" suggests that Plaintiffs believe the discovery rule does not apply to their

defamation claims.  Opp. at 3 n.2.  If true, Plaintiffs appear to have withdrawn their defamation

claim in its entirety.  No exhibit was published after May 30, 2019, almost three years before

Plaintiffs sued.  The timestamp of each screenshot attached to the Complaint falls on or before

that date.  Though the court cannot conclude that Plaintiffs were aware of the Club's use of their

images before May 30, 2019, it would be impossible for any individual to capture the screenshot

without prior publication.

But Plaintiffs expressly withdrew only "defamation claims based on advertisements

published in 2016 or 2017."  *Id.*[6]  The remaining three exhibits were published no later than May

30, 2019.  *See* Compl. Exs. B-5, E-1, and H-1.  Although Plaintiffs did not explicitly withdraw

their defamation claim as to these three images, any claim based on them would be time barred

under a one-year statute of limitations period.  Consequently, the court requires further briefing

to determine which images attached to the Complaint, if any, form the basis of a defamation

claim.  Plaintiffs are directed to identify the images for which they bring a defamation claim and

address the effect of *Chandler* and the D.C. Court of Appeals' holdings regarding application of

the discovery rule to statements that are not published in mass media outlets.  *See Chandler,* 998

---

[6] Plaintiffs attached 32 images to their Complaint.  Seventeen include time-stamped social media
posts with a publication date in 2016 or 2017.  Fifteen posts do not include a date of
publication, but all but three of these images were captured by screenshot in 2017, establishing
a publication date no later than 2017.  *See* Compl. Exs. A-2, B-3, B-4, B-5, B-6, C-2, C-5, D-1,
D-3, E-1, H-1, H-2, H-3, J-2, and K-1; *see also* Mot. at 10–11.

F.3d at 971; *see also Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 299 n.5 (D.C. 2001).  The motion to dismiss Count IV is denied without prejudice.

D.    **Negligence (Count V)**

Plaintiffs next bring a claim for negligence, alleging that Defendants "owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights" and to "consumers at large" to avoid misleading advertising practices.  Compl. ¶¶ 136–37.

Under District of Columbia law, a negligence claim requires a three-part showing "(1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached that duty, and (3) that the breach proximately caused damage to the plaintiff."  *Allen v. District of Columbia*, 312 A.3d 207, 212 (D.C. 2024).  Defendants argue that each Plaintiff's negligence claims— except Plaintiff Gaxiola's claim based on Exhibit E—are barred by the statute of limitations and should be dismissed.  Mot. at 11–12.  The court will dismiss Count V on the separate ground that Plaintiffs failed to allege that Defendants owed them a duty of care.

"The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff."  *N.O.L. v. District of Columbia*, 674 A.2d 498, 499 n.2 (D.C. 1995). The "key to determining whether the defendant had a legally enforceable duty to the plaintiff" is the relationship between the parties.  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 794 (D.C. 2011) (quoting *Bd. of Trs. of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 871 n.1 (D.C. 2009)).  Defendants' alleged duty to the public not to engage in misleading advertising is therefore "entirely irrelevant," as only a duty owed to Plaintiffs could support Plaintiffs' negligence claim.  *Sampedro*, 2023 WL 1398577, at *6.  Rather than allege any relationship between Plaintiffs and Archibald's, Plaintiffs' allegations establish that they have *no* relationship with Defendants: they claim that the Club used their images "without any Plaintiff's knowledge,

consent or authorization" and that no Plaintiff has ever been employed by, hired to endorse, or "otherwise associated or affiliated with" the Club.  Compl. ¶¶ 25, 30, 33, 36, 39, 42, 45, 48, 51, 54, 57, 60, 82, 83.  These allegations are insufficient to allege that the Club owed Plaintiffs a duty of care.

Plaintiffs allege a duty not to negligently "infringe on their property and publicity rights." *Id.* ¶ 136.  But as Judge Howell explained in denying several of the same plaintiffs' negligence claims in a similar suit, "the duty giving rise to a tort action must have some independent basis" derived from the relationship between the parties that is "independent of separately imposed duties such as contractual obligations."  *Sampedro*, 2023 WL 1398577, at *6 (citing *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1088–89 (D.C. 2008)).  As explained above, this is because a defendant "typically only assumes a duty of care towards a plaintiff once the defendant enters into a relationship."  *Roe v. Doe*, 401 F. Supp. 3d 159, 165 (D.D.C. 2019).  "As a result, where plaintiffs and defendant are 'strangers to one another,' the defendant cannot be said to owe any duty of care to the plaintiffs."  *Sampedro*, 2023 WL 1398577, at *6 (quoting *Renchard v. Prince William Marine Sales, Inc.*, 87 F. Supp. 3d 271, 281–82 (D.D.C. 2015)).  Because Plaintiffs have alleged that they are strangers to Archibald's, they have not established that its employees owed them a general duty of care and Count V must be dismissed for failure to state a negligence claim.

## E.     Conversion (Count VI)

Plaintiffs next allege that each Plaintiff has "property interests" in her images and that "Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain."  Compl. ¶¶ 143–44.  Conversion requires "an unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property." *Blanken v. Harris, Upham & Co., Inc.*, 359 A.2d 281, 283 (D.C. 1976).  "Whether D.C. courts

would apply the tort of conversion to intangible property is unsettled," *Xereas v. Heiss*, 933 F. Supp. 2d 1, 6 (D.D.C. 2013), but Maryland courts to which District of Columbia courts look for guidance apply conversion to intangible property rights that "are merged or incorporated into a transferable document," *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 340 (D.D.C. 2011). Here, however, the court need not decide whether the exhibits attached to the Complaint reflect tangible or intangible property because Plaintiffs have not alleged that Defendants exercised ownership, dominion, or control over their images.

"To plead the element of 'ownership, dominion, or control,' a plaintiff must allege that the defendant did something that seriously interfered with the plaintiff's right to control the property in question." *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 196 (D.D.C. 2017) (formatting modified); *see also United States v. Collins*, 56 F.3d 1416, 1420 (D.C. Cir. 1995) ("The cornerstone of conversion is the unauthorized exercise of control over property in such a manner that *serious interference* with ownership rights occurs."). As Defendants note, the Complaint alleges only that Defendants "copied the Plaintiffs' images," not that they "prevented Plaintiffs from using their images at any point or for any purpose." Mot. at 28. Plaintiffs counter that Archibald's use of their images "effectively forced each Plaintiff's association with Archibald's and denied Plaintiffs the ability and opportunity to say 'no.'" Opp. at 11. But Plaintiffs cite no authority indicating that forced association rises to the level of "serious interference," and their argument is unavailing.

A plaintiff "fails to state a claim for conversion where the defendant is only alleged to have made copies of documents while the plaintiff retains the originals because the mere copying of documents does not seriously interfere with the plaintiff's right of control." *Gaubatz*, 793 F. Supp. 2d at 340. Although Defendants copied Plaintiffs' images, not documents, Plaintiffs have

not set forth facts alleging how Defendants' use of their images excluded Plaintiffs from exercising their property rights, or otherwise seriously interfered with their ownership rights. *See Souza v. Algoo Realty, LLC*, No. 3:19-cv-863-MPS, 2020 WL 5300925, at *10 (D. Conn. Sept. 4, 2020). The court will therefore dismiss Count VI.

## F.     Unjust Enrichment (Count VII)

Unjust enrichment occurs "when a person retains a benefit (usually money) which in justice and equity belongs to another." *Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 215 (D.C. 2021). To state a claim for unjust enrichment, Plaintiffs must allege: (1) that they conferred a benefit on Defendants; (2) that Defendants retained the benefit; and that (3) under the circumstances, Defendants' retention of the benefit is unjust. *Bregman v. Perles*, 747 F.3d 873, 876 (D.C. Cir. 2014); *see also Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008). Defendants argue that Plaintiffs' unjust enrichment claim is barred by the statute of limitations and the doctrine of laches, that Plaintiffs have failed to show that they conferred a benefit to the Club, and that the claim must fail because Plaintiffs do not allege that they sought reimbursement and Defendants refused to pay them. Mot. at 12–13, 28–29.

Unjust enrichment claims are subject to a three-year statute of limitations. *Bregman*, 747 F.3d 876. This limitations period begins to run "when the . . . last service has been rendered *and* compensation has been wrongfully withheld." *Boyd v. Kilpatrick Townsend & Stockton*, 164 A.3d 72, 79 (D.C. 2017). Defendants argue that Plaintiffs never demanded payment, and Archibald's "never affirmatively denied payment for the alleged services rendered." Mot. at 13. According to Defendants, the only "wrongful act" to start the limitations period is therefore the Club's "use of Plaintiffs' images without the unprompted act of paying the Plaintiffs for it." *Id.* Defendants contend that because all images except Exhibit E were posted more than four years

before Plaintiffs filed suit, the court must dismiss all claims except Plaintiff Gaxiola's claim

based on Exhibit E. *Id.*

Defendants' argument is unpersuasive. Instead of moving the start of the accrual period

up, failure to demand compensation creates a fact question as to when the defendant's

withholding of unasked-for compensation "became unjust." *Boyd*, 164 A.3d at 80. In *Boyd*, the

plaintiff understood he would be paid for his lobbying efforts but never demanded payment from

the law firm that asked him to lobby on its clients' behalf. *Id*. at 76–77. After Boyd learned the

firm did not plan to pay him for his services, he filed suit without making any demand for

payment, and without waiting for the law firm to refuse. *Id.* at 77, 80. The trial court held that

Boyd's claim was time-barred because it accrued upon his last rendition of services to the

defendants, and the D.C. Court of Appeals reversed, *id.* at 75, finding that the accrual date

depended on a jury's determination of a "'reasonable amount' of time" within which Boyd

"should have regarded the fact that [the law firm] did not pay him for his services to be a

rejection of any such claim, and the related question of whether or when such a failure ripened

into" an unjust enrichment claim. *Id.* at 80.[7]

*Boyd* makes clear that a plaintiff need not allege that they sought reimbursement or that

the defendant refused to pay to state an unjust enrichment claim. *Id.* As in *Boyd*, the court

cannot determine when Plaintiffs' unjust enrichment claim began to run without a fact-based

determination of when Defendants' failure to pay for using Plaintiffs' images became unjust— a

determination that would be improper on a motion to dismiss. *Id.* For the reasons explained

---

[7] The D.C. Court of Appeals instructed the trial court to "have the jury make findings of fact as to the time after appellant last rendered services by which he should reasonably be deemed to have demanded payment for his services, plus the reasonable time thereafter within which appellees should have responded to said demand, and thus determine when appellant's cause of action for unjust enrichment accrued." *Boyd*, 164 A.3d at 80.

above, the court will deny the motion with respect to Defendants' statute of limitations and laches arguments.  *See supra* at 5–9.

The court also rejects Defendants' argument that Plaintiffs failed to allege they "volitionally conferred a benefit" on the Club.  Mot. at 13 n.6 (internal quotations omitted).  The Complaint alleges that the Club's intent in misappropriating Plaintiffs' images "was to benefit commercially" by showing Archibald's "purported association with, employment of, and/or endorsement by Plaintiffs," and that Defendants "did in fact benefit commercially due to their unauthorized use" of Plaintiffs' images by "attracting clientele to the Club."  Compl. ¶¶ 149–51.  Defendants cite no authority for the proposition that because Plaintiffs "had no say and no part to play" in the Club's use of their images, the Club could not have derived a benefit.  Mot. at 29.  To the contrary, "[r]egardless of the parties' knowledge of the transaction at the time," where a defendant like Archibald's "enjoyed the benefit of plaintiffs' modelling services when using their Images in its advertising" it would be "unjust to allow plaintiffs' Images to be misappropriated in this way without their permission or compensation."  *Sampedro*, 2023 WL 1398577, at *7.  Plaintiffs have stated a claim for unjust enrichment and the motion to dismiss will be denied as to Count VII.

### G.   Quantum Meruit (Count VIII)

Plaintiffs' final claim is for quantum meruit, an action available under District of Columbia law which "rests on a contract implied in fact, that is, a contract inferred from the conduct of the parties."  *Alemayehu v. Abere*, 199 F. Supp. 3d 74, 84 n.5 (D.D.C. 2016).  To state a quantum meruit claim Plaintiffs must demonstrate that they (1) rendered valuable services; (2) for the defendant; (3) that those services were accepted and enjoyed by the defendant; and (4) "under such circumstances has reasonably notified the defendant that the plaintiff, in performing such services, expected to be paid."  *UMC Dev., LLC v. District of Columbia*, 120

A.3d 37, 48 n.31 (D.C. 2015); *see also New Econ. Capital, LLC v. New Markets Capital Grp.*, 881 A.2d 1087, 1095 (D.C. 2005).

A quantum meruit claim requires the court to infer a contract "from the conduct of the parties." *Alemayehu*, 199 F. Supp. 3d at 84–85. Defendants are correct that Plaintiffs' claim for quantum meruit fails because their allegations do not establish that they provided modeling services for the Club pursuant to an implied-in-fact contract. Mot. at 30–31. Plaintiffs admit that none of them were "ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of" Plaintiffs' images. Compl. ¶ 81. The Complaint instead states that Defendants published Plaintiffs' images "without any Plaintiff's knowledge, consent or authorization." *Id.* ¶ 25. Plaintiffs never gave the Club permission to use their photographs, and therefore never had the opportunity to notify the Club that they expected to be paid, and Defendants never offered to pay Plaintiffs for the use of their images. *Id.* ¶¶ 82–83. Nor do Plaintiffs allege that they "modeled or posed for photographs for the Club's advertisements," or that Defendants "accepted their services which then impliedly created a promise from the Defendants to pay the Plaintiffs." *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 302 (D. Conn. 2019). Instead, Defendants apparently found and used Plaintiffs' images of their own accord, with Plaintiffs "only realizing the misappropriation years later." *Sampedro*, 2023 WL 1398577, at *7.

These facts do not establish that both Plaintiffs and Defendants knew they were acting under a contractual relationship, primarily "because the parties never interacted at all." *Id.* The court will therefore dismiss Plaintiffs' claim for quantum meruit.

## IV.    CONCLUSION

For the reasons stated above, the court will GRANT in part and DENY in part Defendants' motion to dismiss, ECF No. 11. Specifically, the court will dismiss Counts V, VI,

and VIII for failure to state a claim.  The court will deny Defendants' motion to dismiss as to

Counts I through IV and VII.  With respect to Count IV, Plaintiffs are directed to submit within

14 days of this opinion briefing that identifies the images for which they bring a defamation

claim and addresses the effect of *Chandler v. Berlin*, 998 F.3d 965 (D.C. Cir. 2021) and the D.C.

Court of Appeals' holdings regarding application of the discovery rule to statements that are not

published in mass media outlets.  Defendants will be permitted a response totaling no more than

10 pages within seven days of Plaintiffs' filing.  Defendants' obligation to answer the Complaint

will be STAYED pending further order of the court.


Date: June 17, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge